# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| THOMAS HUNZIKER, as Trustee for the next of kin of ALH, | Case No. 20-CV-2188 (NEB/TNL) |
| Plaintiff, | |
| v. | ORDER ON DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS |
| PATRICIA DOHERTY, in her individual capacity; COUNTY OF HENNEPIN, MINNESOTA; ROBERT MARSHALL, M.D.; KRISTEN MEDHANIE; and ALLINA HEALTH SYSTEM, | |
| Defendants. | |

Thomas Hunziker filed this action as trustee for the next of kin of his granddaughter ALH, who died while in the care of the Hennepin County child welfare system. Hennepin County and social worker Patricia Doherty ("County Defendants") move for judgment on the pleadings on a deliberate-indifference-to-serious-medical-needs claim against Doherty and a *Monell*[1] claim against Hennepin County. For the reasons below, the Court grants the motion in part and denies it in part.

## BACKGROUND

Hennepin County placed ALH, then a two-year-old girl, in foster care with Sherrie and Bryce Dirk (the "Dirks") in September 2016. (ECF No. 1 ("Compl.") ¶¶ 34, 70.)

---

[1] *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

Doherty was the Hennepin County social worker assigned to ALH. (*Id.* ¶¶ 28–29.) The Dirks abused and neglected ALH. (*Id.*, *passim*.) Doherty was allegedly aware that, while in the Dirks' care, ALH lost eleven pounds (falling from the ninety-eighth to the thirteenth percentile), shrank in height (falling from the eighty-eighth to the seventh percentile), was eating non-nutritive items, developed chronic bloody noses, and was engaging in self-harm behavior. (*Id.* ¶¶ 88–114, 118, 121.) Doherty also allegedly knew that the Dirks' house was exceptionally dirty and that the Dirks were medicating ALH and "swaddling" her by wrapping her in sheets and binding her to her bed for hours. (*Id.* ¶¶ 115–17, 122–24, 126.) The Dirks caused ALH's tragic death in November 2017, pleaded guilty to second degree unintentional murder, and are now serving prison sentences. (*Id.* ¶¶ 4, 192–94.)

Hunziker is ALH's grandfather and trustee for ALH's next of kin. (Compl. ¶¶ 24–25.) In October 2020, Hunziker filed this lawsuit against Hennepin County, Doherty, the Dirks, and ALH's medical providers.[2] Count One of the Complaint asserts a Section 1983 Fourteenth Amendment claim against Doherty, alleging that she acted with deliberate indifference to "ALH's serious medical needs, personal safety, and general welfare." (*Id.* ¶¶ 211-24.) Count Two asserts a *Monell* claim against Hennepin County, alleging that it engaged in a pattern of continuing, widespread, and persistent pattern of ignoring the safety, mental health, and well-being of foster children. (*Id.* ¶¶ 195, 225–35.) The

---

[2] Hunziker later dismissed the Dirks from this action. (ECF Nos. 21, 34–35.)

Complaint also asserts claims of medical malpractice against the medical providers and negligence against the County Defendants. (*Id.* ¶¶ 236–57.) Hunziker seeks monetary damages from all defendants, and injunctive relief from Hennepin County. (*Id.* ¶ 7; *id.* at 33–34.)

## ANALYSIS

### I.    Legal Standard

The County Defendants move for partial judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. Rule 12(c) provides that a party may move for judgment on the pleadings at any point after the close of the pleadings, so long as it moves early enough to avoid a delay of trial. Fed. R. Civ. P. 12(c). A court generally assesses a motion for judgment on the pleadings under the same standards as a Rule 12(b)(6) motion. *In re Pre-Filled Propane Tank Antitrust Litig.*, 893 F.3d 1047, 1056 (8th Cir. 2018). Under this standard, "a complaint must allege sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (cleaned up, citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Because this is a Rule 12(c) motion, the Court may consider only the parties' respective pleadings, some public records, and documents attached to or necessarily embraced by the pleadings. *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 982 (8th

Cir. 2008) (citation omitted). The Court will consider the documents referenced in or attached to the pleadings, or that are part of the public record.[3]

## II.    Count One – Deliberate Indifference Claim

Count One alleges that Doherty violated the Fourteenth Amendment when she "under color of state law, acted with deliberate indifference . . . to ALH's serious medical needs, personal safety, and general welfare." (Compl. ¶¶ 215–16.) The County Defendants do not challenge the claim that Doherty was deliberately indifferent to ALH's personal safety or general welfare, so the claim will go forward on those theories regardless of the Court's decision here. The County Defendants ask the Court to dispose of just the portion of Count One alleging that Doherty was deliberately indifferent to ALH's serious medical needs.

To begin with, the Court questions the procedure of disposing of a mere portion of Count One at this stage of litigation. *Compare* Fed. R. Civ. P. 12(b)(6) ("[A] party may assert the following defenses by motion . . . failure to state a *claim* on which relief can be granted. . . .") (emphasis added), *with* Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."); *see generally My Pillow, Inc. v. LMP*

---

[3] The County Defendants object to two exhibits filed in support of Hunziker's opposition brief. (ECF No. 68 at 2 (citing ECF Nos. 66, 66-1 (Storm Decl. Exs. B & C)).) The Court agrees that Storm Declaration Exhibits B and C—which are email communications and excerpts from a chronology summary prepared by Doherty—do not meet the judicial notice standard, and does not consider them in its analysis.

4

*Worldwide, Inc.*, No. 18-CV-0196 (WMW/DTS), 2019 WL 6727298, at *6 (D. Minn. Dec. 11, 2019) ("A motion to strike under Rule 12(f) is the proper means to seek the removal of specific allegations from a pleading, rather than a motion to dismiss under Rule 12(b)(6), which applies to the dismissal of entire claims."). But even if partial dismissal was a viable path forward at this stage of litigation, it is not the path to follow in this case.

The County Defendants maintain that dismissing the serious-medical-needs theory will limit the scope of discovery. (ECF No. 68 at 3 n.3.) But given the facts alleged, discovery relating to Doherty's deliberate indifference to ALH's "serious medical needs"—which the County Defendants seek to dismiss—and ALH's "personal safety" and "general welfare"—which they do not challenge—overlap significantly. (Compl. ¶ 215); *see Norfleet ex rel. Norfleet v. Ark. Dep't of Hum. Servs.*, 989 F.2d 289, 293 (8th Cir. 1993) (explaining that a foster child loses his ability to make decision about "his own welfare," and that the state must provide "adequate medical care, protection, and supervision"). Dismissing the serious-medical-needs theory is unlikely to streamline discovery. Because ALH's medical needs and welfare are related, disposing of one theory while keeping the other would be needlessly formalistic.

Moreover, Hunziker sufficiently alleges a deliberate indifference claim based on ALH's serious medical needs. *See Norfleet*, 989 F.2d at 293 (holding that the state must provide "adequate medical care" for children in foster care because they lose their

"freedom and ability to make decisions about [their] own welfare, and must rely on the state to take care of [their] needs"). To prevail under the serious-medical-needs theory, Hunziker must show (1) ALH suffered objectively serious medical needs and (2) Doherty knew of the medical but was deliberately indifferent to it. *Hanson ex rel. Layton v. Best*, 915 F.3d 543, 548–49 (8th Cir.), *cert. denied*, 140 S. Ct. 50 (2019). To be an objectively serious medical need, either a physician must diagnose the illness or the illness must be so obvious that even a layperson would recognize the need for medical treatment. *Jones v. Minn. Dep't of Corr.*, 512 F.3d 478, 481 (8th Cir. 2008).

The Complaint alleges that: (1) ALH exhibited serious medical needs based on her symptoms of weight and height loss, nosebleeds, eating non-nutritive items (a disorder known as pica), and other warning signs of child abuse and neglect; (2) Doherty knew that ALH was exhibiting all of these warning signs; (3) social workers are trained to look for such warning signs; and (4) Doherty failed to help ALH. (Compl. ¶¶ 87–116, 121–22, 126.) Whether a condition is a serious medical need and whether the defendant was deliberately indifferent to that serious medical need are questions of fact. *Schaub v. VonWald*, 638 F.3d 905, 915 (8th Cir. 2011); *Jones*, 512 F.3d at 482 ("The determination that a medical need is objectively serious is a factual finding."). A factfinder could reasonably find that a layperson knows that a two- or three-year-old child losing eleven pounds and shrinking in height is cause for serious medical concern. Further, a factfinder could reasonably find that a social worker's failure to address the symptoms alleged constitutes

deliberate indifference, because the social worker's expertise could reasonably make her more aware than the average person of warning signs of child abuse and neglect. *See Jones*, 512 F.3d at 482 ("The determination whether a medical need is sufficiently obvious cannot be analyzed in a vacuum. The [defendant's] background knowledge is part of the analysis.").

The County Defendants insist that these allegations are insufficient because Doherty knew that doctors were treating ALH. *See, e.g., Holden v. Hirner*, 663 F.3d 336, 343 (8th Cir. 2011) ("Prison officials lacking medical expertise are entitled to rely on the opinions of medical staff regarding inmate diagnosis and the decision of whether to refer the inmate to outside doctors or dentists."). But there is no indication in the pleadings that Doherty relied on the doctors' analysis. *See Sanville v. McCaughtry*, 266 F.3d 724, 739 (7th Cir. 2001) (holding that the fact that mental health professionals had seen the inmate eleven times during his incarceration did not prevent the court from "finding that someone—whether a guard or a warden or otherwise—was deliberately indifferent to his serious medical needs"); *Lynas as Trustee for Lynas v. Stang*, No. 18-CV-2301 (JRT-KMM), 2020 WL 4816375, at *8 (D. Minn. Aug. 19, 2020) ("Whether a failure to conduct adequate checks on an inmate constitutes reckless indifference depends on the specific factual circumstances.").[4]

---

[4] Hunziker also argues that judicial estoppel precludes the County Defendants from arguing that ALH did not have objectively serious medical needs because, in the criminal proceedings against the Dirks, the Hennepin County Attorney's Office submitted an

The allegations in the pleadings are sufficient to withstand the County Defendants' motion on the serious-medical-needs theory, and the Court therefore denies it.

### III.   Count Two – *Monell* Claim

Count Two asserts a *Monell* claim under the Fourteenth Amendment, arguing that Hennepin County had a "custom" of deliberate indifference to the rights of foster children. (Compl. ¶¶ 8, 225–35.) Under *Monell*, governmental entities "are not vicariously liable under [Section] 1983 for their employees' actions." *Connick v. Thompson*, 563 U.S. 51,

---

expert report stating that "[t]orture usually includes neglect of obvious medical needs that are often the result of abusive injuries." (ECF No. 64 at 11, 27–29.) But "it is well settled that the Government may not be estopped on the same terms as any other litigant." *Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 60 (1984). A party seeking to estop the government must first bear the "heavy burden" to show the government "engaged in affirmative misconduct." *Morgan v. Comm'r*, 345 F.3d 563, 566 (8th Cir. 2003). Even if Hunziker satisfied this requirement, the Court has discretion to apply judicial estoppel where: (1) the County Defendants' later position is "clearly inconsistent with its earlier position"; (2) the County Defendants "succeeded in persuading a court to accept [its] earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; and (3) the County Defendants "would derive an unfair advantage or impose an unfair detriment on [Hunziker] if not estopped." *United States v. Hamed*, 976 F.3d 825, 829 (8th Cir. 2020) (citation omitted). The County Defendants did not hold "clearly inconsistent" positions because neither Hennepin County nor Doherty were parties to the criminal proceeding against the Dirks. Although the Hennepin County Attorney's Office prosecuted the Dirks, it did so as "an arm of the state," not as a county representative. *See St. James v. City of Minneapolis*, No. 05-CV-2348 (DWF/JJG), 2006 WL 2591016, at *4 (D. Minn. June 13, 2006) ("The office of the county attorney, although identified as a county office by statute, functions as an arm of the state when prosecuting felonies."). And even if they were the same parties, there is no unfair detriment to Hunziker because the Court declines to dismiss his serious-medical-needs claim. The Court therefore exercises its discretion and declines to apply judicial estoppel.

60 (2011). They may, however, be liable under Section 1983 if they "subject[] a person to a deprivation of rights or cause[] a person to be subjected to such deprivation." *Id.* at 59 (citation and quotations omitted). Hennepin County may only be liable for a constitutional violation resulting from an official policy, an unofficial custom, or a failure to train or supervise. *Robbins v. City of Des Moines*, 984 F.3d 673, 681–82 (8th Cir. 2021).

Count Two alleges a "custom" theory, which requires: (1) "a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees"; (2) "deliberate indifference to or tacit authorization of" such conduct by policymaking officials after notice to the officials of that misconduct; and (3) "proof that the custom was the moving force behind the constitutional violation." *Hamilton v. City of Hayti*, 948 F.3d 921, 930 (8th Cir. 2020) (cleaned up, citations omitted); (*see* Compl. ¶ 226, ECF No. 26 at 5 (asserting the *Monell* claim stems from "the County's unconstitutional customs").) Critical to the analysis here is that an isolated incident of alleged misconduct does not establish a municipal custom. *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1061 (8th Cir. 2013). "To establish deliberate indifference, a plaintiff ordinarily must show a pattern of constitutional violations." *Perkins v. Hastings*, 915 F.3d 512, 521 (8th Cir. 2019).

### A.  *Allegations of Customs*

The Complaint alleges several "customs": "failing to monitor, coordinate the care for, and address the obvious and serious medical needs and obvious risk to the safety

9

and welfare of Hennepin County foster children"; "underfunding the Hennepin County Children and Family Services" ("CFS"); "placing foster children with unsuitable foster parents"; "failing to supervise, monitor, and investigate foster care providers"; and "failing to monitor, coordinate the care for, and address the obvious and serious medical needs and obvious risk to the safety and welfare of foster children." (Compl. ¶¶ 227–31; *see also id*. ¶ 208 ("ALH's death was a result of Hennepin County's custom and practice of deliberate indifference to foster children's safety and serious mental and physical medical needs.").) The opposition brief focuses on three customs: (1) "failing to provide timely medical or mental health treatment for children in foster care"; (2) "failing to require social workers be medically trained or medically proficient in recognizing medical needs, mental health needs, and abuse or neglect of foster children"; and (3) "failing to ensure that foster care placements are safe and appropriate." (EFC No. 64 at 31.) At oral argument, Hunziker's counsel acknowledged that the Complaint does not currently allege a failure-to-train claim. The Court thus limits its analysis to the alleged customs of failing to provide foster children with timely health treatment and appropriate placement.

The problem with these allegations is that they are pled in too conclusory a manner under the law interpreting *Monell* claims. In *D.B. v. Hargett*, for example, the plaintiff brought a *Monell* claim alleging that his school district had a policy or custom of inadequately training and supervising its bus drivers on "appropriate methods" of

managing student behavior, disciplining students, and when to drop off a student at a different location. No. 13-CV-2781 (MJD/LIB), 2014 WL 1371200, at *5–6 (D. Minn. Apr. 8, 2014). The court dismissed this claim because it alleged "mere generic elements of a *Monell* claim without any factual allegations specific to this case," and did not allege other prior incidents in any detail. *Id.* at *6–7 & n.10. Other courts have dismissed conclusory *Monell* claims that "d[id] not describe any *specific* policy, custom or practice that allegedly caused a violation of [a plaintiff's] constitutional rights," and did not allege any "factual allegations describing any specific policy, custom or practice that was established by any particular defendant." *Triemert v. Washington Cnty.*, No. 13-CV-1312 (PJS/JSM), 2013 WL 6729260, at *12 (D. Minn. Dec. 19, 2013) (emphasis in original), *aff'd*, 571 F. App'x 509 (8th Cir. 2014). The Court agrees that the alleged customs of failing to provide foster children with timely medical or mental health treatment and safe and appropriate foster care placements are insufficient under *Monell*. Like the complaint allegations in *D.B.*, these "vague and conclusory allegations," on their own, do not state a *Monell* claim. 2014 WL 1371200, at *6.

### B.    *Allegations of Specific Facts*

Even though Hunziker "need not . . . specifically plead the existence of an unconstitutional policy or custom," he must allege specific facts supporting an unconstitutional custom. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). The Complaint alleges an analogy to the death of another child in

December 2014, a 2015 report by Casey Family Services assessing the Hennepin County child protection system, and class action litigation against Hennepin County filed in 2017. As explained below, these three sets of facts are insufficient to plead an unconstitutional "custom," because they are insufficiently similar to those of ALH.

    1.  *KZJ*

The Complaint alleges that circumstances surrounding ALH's death are much like those of KZJ, another child who died while in foster care. (Compl. ¶¶ 197–200.) Six-year-old KZJ was placed in Hennepin County foster care in March 2014. (*Id.* ¶ 197; ECF No. 52-1 (*Broadus v. Johnson*, No. 16-CV-1211 (WMW/SER) (D. Minn. Apr. 27, 2017) ("*Broadus* Order") at 2.) KZJ allegedly suffered from an untreated mental illness and exhibited symptoms consistent with major depressive disorder, including suicidal ideation and self-harm behavior. (Compl. ¶¶ 197–98; *Broadus* Order at 2–3.) In December 2014, KZJ committed suicide by hanging herself with a jump rope at her foster home. (Compl. ¶ 197.) KZJ's foster mother was not trained to provide foster care services for a child with KZJ's needs and KZJ did not receive mental health treatment that allegedly could have prevented her death. (*Id.* ¶ 199; *Broadus* Order at 2.) At a high level of generality, there are similarities between KZJ and ALH—they both suffered mental deterioration while in foster care, and both died in the care of foster parents. But unlike KZJ, the Complaint does not allege that ALH was suicidal or somehow caused her own death. Instead, the Complaint alleges that the Dirks starved ALH, improperly medicated her, and

"swaddled" her by binding her in bedsheets and leaving her alone in her room for hours multiple times a day, and for entire days and nights. (*Id*. ¶¶ 4, 74, 79–82, 116, 166–72.) Indeed, the Dirks pleaded guilty to second degree intentional murder for causing ALH's death. (*Id*. ¶¶ 20, 23, 191–94.) This fact makes the cases of ALH and KZJ dramatically different, and certainly sufficiently dissimilar to constitute an unconstitutional custom. *See D.B.*, 2014 WL 1371200, at *7 n.10 (dismissing *Monell* claim where the plaintiff failed to plead specific facts that would allow the court to conclude that "prior incidents involving other students" were sufficiently similar to the plaintiff's experience to "constitute a pattern of behavior"). As a result, the factual allegations about KZJ do not support an unconstitutional custom.

Nor does the Complaint allege facts that would allow the Court to conclude that Hennepin County policymakers knew of, and were deliberately indifferent to, misconduct by county employees related to the death of KZJ. "Notice is the touchstone of deliberate indifference in the context of [Section] 1983 municipal liability." *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1216 (8th Cir. 2013) (finding a "bare allegation" of deliberate indifference to be "patently insufficient"). The Complaint alleges that "Hennepin County is aware of this unconstitutional misconduct but continues to do nothing to fix it," (Compl. ¶ 201), but it does not allege any facts that would allow the Court to conclude that county policymakers knew of KZJ's death and were deliberately indifferent to any misconduct by county employees. These "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice."
*Iqbal*, 556 U.S. at 678; *see Broadus* Order at 11 ("[T]here simply are no facts in the Amended
Complaint to support an inference that County officials were aware of—much less chose
not to address—a pattern of County employees ignoring the health and safety needs of
mentally ill children in foster care."); *D.B.*, 2014 WL 1371200, at *7 & n.10 (dismissing
*Monell* claim where plaintiff failed to plead specific facts that would allow the court to
infer that a school district was aware of or deliberately indifferent to misconduct by
school bus drivers); *cf. Brenner v. Asfeld*, No. 18-CV-2383 (NEB/ECW), 2019 WL 2358451,
at *6 (D. Minn. June 4, 2019) (finding deliberate indifference claim was not futile where
the complaint contained "detailed allegations about Defendants' knowledge of [suicide
victim's] mental health history, prescription medication regime, placement in maximum
security, and recent guilty verdict"). Without allegations of facts supporting an inference
that Hennepin County was deliberately indifferent to KZJ's death, the prior
circumstances of her death do not support an unconstitutional custom.

2.   *The Casey Report*

The Complaint also points to a 2015 report by Casey Family Services ("Casey
Report") to support its allegations of an unconstitutional custom. (*Id.* ¶¶ 203–210.) The
"focus and purpose" of the Casey Report was to assess the effectiveness of Hennepin
County's "Child Protection intake system (screening, assessment, investigation and
closure/transition) in assessing and addressing child safety, risk and family need." (ECF

No. 22-1 ("Casey Report") at 4.) Issued in June 2015, the report found that several budget cuts had harmed Hennepin County's child protection system, and provided recommendations to improve the organizational culture and structure, child safety, and workforce development. (*Id.* at 29–31.)

Although the Casey Report includes some general statements about the Hennepin County's child welfare system, the purpose of the report was to evaluate the effectiveness of Hennepin County's "intake system," *i.e.*, the procedures Hennepin County used to screen reports of child maltreatment. (Casey Report at 4; *see Broadus* Order at 10.) The Casey Report "does not address procedures for licensing foster-care providers, selecting or supervising foster-care placements, or providing for the mental-health needs of children in foster care."[5] (*Broadus* Order at 10.) Nor did the Casey Report's findings show that Hennepin County was aware of misconduct that threatened mentally-ill children or that the County was deliberately indifferent to such misconduct. (*Id.*) Thus, the Casey Report is not relevant to the alleged custom of failing to provide timely medical and mental health treatment and appropriate placement of children in the Hennepin County foster care system.

---

[5] The *Broadus* court also declined to consider the Casey Report because KZJ died before the report was issued. (*Broadus* Order at 10.) Although ALH died after the Casey Report was issued, the Court is not persuaded that the general statements cited by Hunziker support the customs alleged by Hunziker. (*See, e.g.*, ECF No. 64 at 36 ("You can't do a good job anymore. It feels unsafe. Kids are going to get hurt.").)

The Complaint also alleges that Hennepin County allegedly commissioned the Casey Report after the County had "received particular [media] attention regarding concerns related to child protection practices." (Compl. ¶ 203–04 (quoting Casey Report).) "To establish deliberate indifference on such a claim, [a plaintiff] must show that the [state] had either actual or constructive notice of the inadequacy of its training program *and failed to take remedial steps*." *Thelma D. ex rel. Delores A. v. Bd. of Educ.*, 934 F.2d 929, 935 (8th Cir. 1991) (emphasis added). The allegation that Hennepin County commissioned the Casey Report in response to concerns about its child protection practices cuts against the conclusion that County policymakers were deliberately indifferent to the alleged misconduct.

### 3.   *The* T.F. *Litigation*

Finally, the Plaintiff attempts to support its custom claim by citing to a class action against Hennepin County filed several months before ALH's death.[6] (Compl. ¶ 209.) This cursory reference to the *T.F.* Litigation does not allege facts that would support an

---

[6] *T.F. v. Hennepin County*, Case No. 17-CV-1826 (PAM/BRT). The *T.F.* plaintiffs were thirteen children who were or had been under the care of Hennepin County's child welfare and protection system and who alleged that Hennepin County was not doing enough to protect children in the system. (ECF No. 37-2 ("*T.F.* SAC").) Among other claims, they brought a Section 1983 claim against Hennepin County for substantive due process violations. (*T.F.* SAC ¶¶ 407–18.) The parties eventually entered into a settlement agreement in which the plaintiffs agreed to dismiss without prejudice the remaining claims, including the Section 1983 claim, and the County agreed to implement several measures relating to its child welfare and child protection system. (ECF No. 22-3.)

unconstitutional custom of failure to provide timely medical and mental health treatment or appropriate placement to foster children. *Crumpley-Patterson*, 388 F.3d at 591.

In his opposition brief, Hunziker tries to bolster this conclusory allegation by citing more than 140 paragraphs of the complaint in *T.F.*, arguing summarily that the thirteen *T.F.* plaintiffs "suffered from . . . mental health issues and abuse or neglect, and endured physical, emotion[al] and psychological harm because Hennepin County neglected to provide timely treatment" and "failed to provide services to ensure that each child's physical, psychological, and emotional needs [we]re being met." (ECF No. 64 at 33 (citing *T.F.* SAC ¶¶ 45–186); *id.* at 15–16.) But Hunziker cannot amend the Complaint by asserting factual allegations in his opposition brief. *See Al-Saadoon v. Barr*, 973 F.3d 794, 805 (8th Cir. 2020) ("[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.") (citation omitted); *Liedtke v. Runningen*, No. 15-CV-3361 (JRT/HB), 2016 WL 11491379, at *5 (D. Minn. June 30, 2016) ("[A] plaintiff may not add factual allegations to her complaint in a memorandum in opposition to a motion to dismiss."), *report and recommendation adopted*, 2016 WL 5660455 (D. Minn. Sept. 29, 2016), *aff'd*, 697 F. App'x 468 (8th Cir. 2017); *Dolan v. Bos. Sci. Corp.*, No. 20-CV-1827 (NEB/LIB), 2021 WL 698777, at *3 & n.2 (D. Minn. Feb. 23, 2021) (dismissing beach-of-warranty claim for failure to allege notice despite plaintiff's assertion in her opposition brief that she gave notice).

The Court grants the motion for judgment on the pleadings as to Count Two.[7]

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS

HEREBY ORDERED THAT:

1. The County Defendants' motion for judgment on the pleadings (ECF No. 50) is

   GRANTED IN PART and DENIED IN PART; and

2. Count Two is DISMISSED WITHOUT PREJUDICE.


Dated: July 26, 2021                          BY THE COURT:

                                              s/Nancy E. Brasel
                                              Nancy E. Brasel
                                              United States District Judge

---

[7] The County Defendants also argue that the settlement of the *T.F.* Litigation bars Hunziker from asserting Count Two. (ECF No. 51 at 30–32; ECF No. 68 at 11–12.) Because the Court dismisses Count Two under Rule 12(c), it need not resolve this complicated issue now.